[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff wife, Judith B. Fournier, commenced this action seeking a dissolution of the marriage on the ground of irretrievable breakdown, joint custody of the parties' minor child, and other relief. The defendant husband, Donald J. Fournier, filed an answer admitting that the marriage of the parties was broken down irretrievably, and a cross-complaint, also seeking a dissolution of the marriage, joint custody and other relief. Both parties appeared at trial with counsel and each testified. The court, after hearing the evidence, finds the following facts.
The wife, whose maiden name was Judith Perrone, married the husband on December 16, 1959, at Elkton, Maryland. She has CT Page 8712 resided continuously in this state more than one year before the date of filing of her complaint, which was June 17, 1992. All statutory stays have expired and this court has jurisdiction.
The parties have one minor child, issue of the marriage, Amy Allison Fournier, born January 26, 1978. Four other children were born to the wife after the marriage of the parties, none of whom is now a minor.
The wife is 51 years of age and in good health except for the residual effects of a back injury she sustained in 1986 while employed at an egg processing facility. She received a worker's compensation settlement from the injury, which has been spent by her on living expenses since the parties' separation in December 1991. She completed the 10th grade at high school, dropped out at 16 and married at 17. Outside of the egg processing job, which involved grading, washing and packing eggs, she held no substantial employment outside of the home, except for some sporadic house cleaning jobs. At present, she has no formal vocational skills or training, nor has she sought any. She devoted the major part of her time during this almost 34-year marriage to homemaking, caring for the children and doing the cooking, laundry, etc.
The husband is 61 years of age, a high school graduate, has a hearing disability, and had open heart surgery and periods of mental depression. He is now a recovering alcoholic and has been sober for at least the past ten years. He has always worked as an automobile mechanic and had several different employers until about 1982 when he began working for the State of Connecticut, where he remains today.
The wife testified that the parties' marriage started off well, and remained so, at least for the first ten years. Thereafter, the husband began drinking to excess, but kept working, and verbally abused her. Eventually, he began going to Alcoholics Anonymous (AA), in which he thoroughly immersed himself. All of his friends, conversation and life style became focused on his continued sobriety and the AA program. The wife felt herself shut out, and the parties were unable to communicate with each other.
The husband then began to have serious emotional problems and behaved in a bizarre manner, which resulted in his psychiatric hospitalizations on a number of occasions. The wife CT Page 8713 assisted him in obtaining treatment. In any event, the parties became further and further estranged from each other, even though residing in the same house, until December 1991, when the wife left the family home, and the parties have remained separated until the present. On this evidence, the court finds that the marriage of the parties has broken down irretrievably, and that the breakdown was largely caused by the husband's initial alcoholism, which was not alleviated by his later sobriety, and was aggravated by his mental problems.
Their minor child, Amy, now resides with the husband in the family dwelling. The parties have sought joint legal custody in their pleadings, and have agreed to it on the record, with primary physical custody of Amy with the husband, subject to reasonable rights of visitation in the wife. The wife also testified that Amy wishes to reside with her father. As the parties have agreed on joint legal custody, the statutory presumption in General Statutes 46b-56a(b) arises that such joint custody is in Amy's best interests, and the court so finds.
The husband now earns $610.87 per week gross and $445.49 net from his state job. The wife is unemployed and resides with an elderly man who is ill and for whom she cares in exchange for room and board.
The parties have the following assets, as shown on their financial affidavits. They jointly own a dwelling and acreage on Miller Road, Preston, Connecticut, valued at $150,000, less a mortgage balance of about $2,600, leaving an equity of $147,600. In addition to the dwelling, and the lot on which it stands, are an additional 60 acres more or less.
The husband has two vehicles, with a total equity of $500, $900 in the bank and a pension/retirement plan through his state employment which would provide him with $480 per month if he retired at age 62 (February 1, 1994), which he does not plan to do, and $625 per month at age 65. He may also be eligible for disability retirement at 60 percent of his annual salary should he be determined to be disabled. The husband shows $3,393 in liabilities on his financial affidavit, the wife, $219 on hers.
The husband, despite his physical and mental condition, has a superior earning capacity to that of the wife as she has minimal, if any, earning capacity. She is unable to stand for long periods of time, and may only lift up to ten pounds. CT Page 8714 Although she appears intelligent and articulate, the court cannot find that at age 51, with a tenth grade education, that she is able to earn much more than the minimum wage, even if she is able to work full time, unless she obtained some vocational skill, and she apparently has no plans to, nor is there any evidence that she is able to.
The court also notes that the husband owned a home prior to the marriage which the parties occupied, and sold, after he inherited the present dwelling and land from his grandfather. The proceeds of the first home and the wife's inheritance went into improvements in the inherited home. The court also recognizes wife's non-monetary contributions to the marriage. See O'Neill v. O'Neill, 13 Conn. App. 300, cert. denied,207 Conn. 806 (1988).
The court has considered all of the factors in General Statutes 46b-81, 46b-82 and 46b-84, in the light of the evidence and orders the following:
A decree dissolving the marriage may enter on the ground of irretrievable breakdown of the marriage.
Joint legal custody of Amy is granted to the parties, primary physical custody to the defendant husband with reasonable rights of visitation to the plaintiff wife.
The defendant shall pay for and maintain his present job-related health and medical coverage for Amy, and the parties shall share her unreimbursed or uncovered medical expenses in the following ratio: defendant husband, seventy-five (75%) percent; plaintiff wife, twenty-five (25%) percent. A General Statutes46b-84 (c) order shall enter, and in the event either parent claims payment of the other's share of any uncovered or unreimbursed health or medical bills for the child, said share shall be payable within sixty (60) days of presentation of copies of the bills and the insurance company's statement of benefits.
At this time, no support order is entered, and the husband shall have the dependent's exemption for Amy for federal and state income tax purposes
The wife shall convey all of her right, title and interest in and to the family dwelling and land on Miller Road, Preston, Connecticut, to the husband by quit claim deed, subject CT Page 8715 to the present mortgage, which he shall pay and save her harmless from. Simultaneously, he shall execute and deliver to her a promissory note, secured by a second mortgage on said premises in the amount of $67,000, with interest at the rate of three (3%) percent per annum. The principal and interest shall be due and payable upon the first to occur of the following events: the husband's death or remarriage, or ceasing to reside in the mortgaged premises as his principal residence, or sale of the mortgaged premises, or July 1, 1997. Said note and mortgage shall also contain a provision that the husband shall be entitled to a partial release of said mortgage in the event he sells a lot, other than the lot on which the dwelling stands, or any of the unimproved land, upon the payment to the wife of a sum not less than eighty (80%) percent of the gross proceeds from said sale, or $35,000, whichever is greater. The husband shall pay, as periodic alimony, taxable to wife and deductible by him, for state and federal income tax purposes, the sum of $60 per week, which shall terminate upon the death of either party, her remarriage, or living together with another person within the meaning of 46b-86 (b). Her present living arrangement, as testified to by her, shall not be sufficient to invoke this section.
As additional periodic alimony, the husband shall pay the sum of $224.07 per month toward the health insurance premium for the wife, and shall cooperate to execute and deliver any and all documents incidental or necessary to the continuing of the present health and medical insurance coverage available through his employment for her benefit, under the provisions of the Consolidated Omnibus Budget Reconciliation Act (COBRA) or General Statutes 38a-538. Said additional alimony shall terminate upon the death of either party, the wife's remarriage, obtaining employment with health insurance available at a cost to her of less than $100 per month or three years from the date of this decree, and shall be taxable to wife and deductible to husband for state and federal income tax purposes. The periodic alimony payments shall be secured by an immediate wage execution.
The husband shall transfer to the wife, by means of a Qualified Domestic Relations Order (QDRO) or other appropriate instrument, forty (40%) percent of his present interest in his state employment retirement/pension plan. The wife shall irrevocably designate the husband survivor beneficiary of her interest; he shall irrevocably designate her as survivor beneficiary of his remaining interest. The irrevocable CT Page 8716 designations shall terminate if the survivor beneficiary predeceases the other spouse.
The husband shall also irrevocably designate the wife as beneficiary of twenty thousand dollars ($20,000) of his job-related life insurance policy so long as he is obligated to pay alimony hereunder, and shall execute and deliver to her an authorization directed to the life insurance company to enable her to obtain information as to the status of the policy.
Each shall take and have the motor vehicles and bank accounts in their respective possessions. The husband shall take and have, free of wife's claims, all of the personal property, furniture and household furnishings in the family dwelling, with the exception of: her antique bedroom set; French provincial furniture; the Governor Winthrop desk; the marble top dresser; the antique vanity and antique wardrobe, which shall belong to the wife's. The husband shall provide free storage of these items at wife's sole risk, until he sells the home, or upon their earlier removal by the wife, or until one year from the date of this decree, whichever occurs first.
The husband is ordered to pay toward wife's attorney's fees the sum of $500 at the rate of $50 per month, commencing December 1, 1993, as the court finds that a total denial of wife's claim for counsel fees would unduly impair and undermine the other financial awards entered.
Teller, J.